**POPE v. UNITED STATES.**

No. 45704.

Court of Claims.

Oct. 1, 1945.

This case having been heard by the Court of Claims, the court, upon the evidence and the report of a commissioner, makes the following special findings of fact:

1. Plaintiff is the Allen Pope who was plaintiff in cause docketed as No. K–366, decided by this Court on March 7, 1932, and reported in 76 Ct.Cl. 64. The special findings of fact made therein by the Court are made a part of these findings by reference.

The plaintiff in case No. K–366 sued on a contract entered into December 3, 1924, for the construction of a section of a tunnel designed to carry water for the District of Columbia. In that suit the plaintiff was given judgment for $45,174.46. This judgment consisted of (1) an item of $13,290.22, representing the expense of substitutions ordered by the contracting officer in the method of carrying on the work, which substitutions were not authorized by the contract; (2) an item of $2,500 for timber used by the contractor and authorized by the contract; (3) an item of $231.54 for concrete actually placed and authorized by the contract to be placed; (4) an item of $500 earned, withheld and wrongfully retained for indemnification; (5) items aggregating

$17,427.70 for excess work due to defendant's having furnished erroneous lines and grades, including the removal of 723 cubic yards of material caved in over the arch in the rock sections of the tunnel, and hereinafter to be referred to, and (6) an item of $11,225, damages for delay due to interference by the agents of the Government with the plaintiff's methods of construction.

2. Section V (1) of the petition in the instant case claims (a) $969, excavation of caved-in material, 57 cubic yards at $17 per yard between an original contract line, known as the "B" line, and the "B" line as lowered three inches by the contracting officer; (b) $4,879, for excavation of 287 cubic yards of cave-ins at $17 per yard, due to omission of sidewall lagging; and (c) $4,879, for filling with concrete the 287 cubic yards of caved-in spaces at $17 per yard, a total of $10,727. This claim of $10,727 was made in Section XII of plaintiff's petition in case No. K–366. The Court's finding made relative thereto is No. XI, 76 Ct.Cl. 64, 74. Recovery was denied.

3. Section V (2) of the petition in the instant case claims $81,277 for excavation of 4,781 cubic yards of material at $17 per yard, caved-in over the tunnel arch. The petition sets forth the total cubic yardage of such material as 5,561 cubic yards, and excludes therefrom (a) 57 cubic yards claimed as above in Section V (2) of this petition, and (b) 723 cubic yards allowed for by the Court, finding X in case No. K–366, 76 Ct.Cl. 64, 73, and mentioned in finding No. 1 hereinabove. There is no claim in the original petition in case No. K–366 for the excavation as such of these 4,781 cubic yards, but there is therein a claim for grouting and drypacking the space voided by the caved-in material. See Sections IV and V of the original petition, case No. K–366. For drypacking in this area and grouting see the Court's findings in case No. K–366, findings III and IV, 76 Ct.Cl. 64, 65, 69, on which the Court allowed no recovery.

4. Section V (3) of the petition in the instant suit claims $14,240.70, which plaintiff says remains unpaid for dry packing the 5,561 cubic yards mentioned above (Section V (2) of the instant petition), being a balance of 4,746.9 cubic yards of dry packing at $3 per cubic yard, plaintiff having been paid for 814.1 cubic yards only on the contracting officer's estimate. This item is substantially Section V of the original petition. See the Court's findings in case No. K–366,

findings III, IV, and VI, 76 Ct.Cl. 64, 65, 69, 72. No recovery was allowed on this item.

5. Section V (4) of the petition in the instant suit claims $56,362.10, for 18,790.7 bags of cement at $3 per bag. The correct extension is $56,372.10. This is a claim for grouting, embodied in Section IV of the original petition, and embraced in the Court's findings Nos. III and VI in case No. K–366, 76 Ct.Cl. 64, 65, 72, there indicated as consisting of 13,891 bags of cement pumped in grout into cavities in the timbered sections, not paid for, and 4,899.7 bags of cement used in grout poured into cavities in the rock section, the item of 4,899.7 bags being 9,032 bags consumed less 4,132.3 bags paid for. No recovery was allowed on this item.

The total number of bags of cement used in grouting, 22,923 bags, being the sum of 13,891 bags and 9,032 bags, converted by the liquid method described in the opinion of the Court, 76 Ct.Cl. 64, 85, using 40 percent of the dry-packed area as void, and one bag of cement to 2.62 cubic feet of grout, represents 5,561 cubic yards of space dry packed and grouted.

6. Unit prices named in the contract were, for excavating, $17 per cubic yard, for concrete work, $17 per cubic yard, for dry packing, $3 per cubic yard, and for grouting, $3 per bag of cement.

7. The specifications which were a part of the contract upon which the former suit, K–366, was based, contained, inter alia, the following provisions:

"48. Measurements.—The quantities to be paid for will be determined by measurements made on the ground by the representatives of the contracting officer, of the finished work according to the lines shown on the drawing or called for by the specifications and by computations therefrom, and the actual quantities so determined will be used as a basis for payment."

"58. Excavation in Tunnel and End Structures.—The excavation under this section includes all the work of this class necessary in the tunnel and for the end structures as shown on the drawings. The excavation in the tunnel shall be made within the prescribed limits as shown on the drawing and as described in these specifications. The contractor shall make all excavation in the tunnel in accordance with reference lines 'A,' 'B,' and 'C' as shown on the drawing and described in paragraph number 33, but with the understanding that no excavation removed beyond the 'B' line will be paid for."

"62. Dry Packing and Grouting in Tunnel.—No dry packing will be allowed except where necessary over the crown of the tunnel arch, in which case clean sound stones shall be used for packing and the spaces between such packing shall be thoroughly filled with grout, pumped into place, consisting of one part of Portland cement and 2 parts of fine building sand mixed with a suitable amount of water.

"Dry packing will be paid for by the cubic yard at the price bid by the contractor, the actual amount being determined by measuring the spaces so filled.

"Grouting will be paid for by the number of bags of cement used in the grout, pumped into place and at the price bid by the contractor."

8. The excavation of the 57 cubic yards of materials between the B line as lowered, and the original B line, referred to in finding 2, would have had to be paid for under the contract if the contracting officer had not changed the plans by lowering the B line. The removal of the 287 yards of materials caved in from the side walls, referred to in finding 2, was made necessary by the contracting officer's direction to the plaintiff to omit the side wall timber lagging which would have prevented the cave-in of this material. The filling of the 287 yards of caved-in spaces with concrete, referred to in finding 2, was directed by the contracting officer. The removal of the materials which caved in from above the tunnel, referred to in finding 3, was not made necessary by any direction or default on the part of agents of the Government. The dry packing and grouting, referred to in findings 4 and 5, of the spaces left vacant by these cave-ins, was done at the direction of the contracting officer or his representative. All of the work mentioned in this finding was useful and beneficial to the Government. None of it has been paid for, but, as to the work of disposing of the materials which caved in from the top of the tunnel, the plaintiff will have been paid for that work what he expected to receive under the contract and what he was entitled to receive at contract rates, when he is paid the contract rates for dry packing and grouting the spaces left by the cave-ins.

9. This case comes to this court under the special jurisdictional act of February

27, 1942, 56 Stat. 1122. The petition herein was filed July 7, 1942.

George R. Shields, of Washington, D. C. (King & King, of Washington, D. C., on the brief), for plaintiff.

Francis M. Shea, Asst. Atty. Gen. (Newell A. Clapp, of Chicago, Ill., and David L. Kreeger and Cecelia H. Goetz, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

This suit was brought pursuant to the special act of Congress of February 27, 1942, 56 Stat. 1122. We rendered a decision on January 3, 1944, reported in 100 Ct.Cl. 375, holding that the special act was unconstitutional, as an attempted direction by Congress to this court to hear and decide again a case which the court had, in 1932, 76 Ct.Cl. 64, heard and decided under its general statutory jurisdiction, and to decide the case in a manner directed by Congress. Our decision that the special act was unconstitutional was reversed by the Supreme Court of the United States, 323 U.S. 1, 65 S.Ct. 16, that court holding that the special act did not award the plaintiff a new trial in the suit formerly decided, but rather created in the plaintiff a new cause of action where none had existed before, by so changing the law as to convert the plaintiff's moral claims, upon which he could not otherwise recover because they had been the subject of an adverse judgment, into legal claims, enforceable in this court. The Supreme Court held that Congress had the power to make such a change in the law for the benefit of a claimant against the United States.

The validity of the special act being thus established, we now proceed to its interpretation, and its application to the facts of the case. Its text is as follows:

"An Act

"To confer jurisdiction upon the Court of Claims to hear, determine, and render judgment upon the claims of Allen Pope, his heirs or personal representatives, against the United States.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That jurisdiction be, and the same is hereby, conferred upon the Court of Claims of the United States, notwithstanding any prior determination, any statute of limitations, release, or prior acceptance of partial allowance, to hear, determine, and render judgment upon the claims of Allen Pope, his heirs or personal representatives, against the United States, as described and in the manner set out in section 2 hereof, which claims arise out of the construction by him of a tunnel for the second high service of the water supply in the District of Columbia.

"Sec. 2. The Court of Claims is hereby directed to determine and render judgment at contract rates upon the claims of the said Allen Pope, his heirs or personal representatives, for certain work performed for which he has not been paid, but of which the Government has received the use and benefit; namely, for the excavation and concrete work found by the court to have been performed by the said Pope in complying with certain orders of the contracting officer, whereby the plans for the work were so changed as to lower the upper 'B' or 'pay' line three inches, and as to omit the timber lagging from the side walls of the tunnel; and for the work of excavating materials which caved in over the tunnel arch and for filling such caved-in spaces with dry packing and grout, as directed by the contracting officer, the amount of dry packing to be determined by the liquid method as described by the court and based on the volume of grout actually used, and the amount of grout to be as determined by the court's previous findings based on the number of bags of cement used in the grout actually pumped into the dry packing.

"Sec. 3. Any suit brought under the provisions of this Act shall be instituted within one year from the date of the approval hereof, and the court shall consider as evidence in such suit any or all evidence heretofore taken by either party in the case of Allen Pope against the United States, numbered K–366, in the Court of Claims, together with any additional evidence which may be taken.

"Sec. 4. From any decision or judgment rendered in any suit presented under the authority of this Act, a writ of certiorari to the Supreme Court of the United States may be applied for by either party thereto, as is provided by law in other cases.

"Approved, February 27, 1942."

■ Section 2 of the special act, in lines 6 to 11, gives the plaintiff a cause of action for excavation and concrete work done, but not paid for because the "B" or pay line of the tunnel was lowered by the contracting officer. As shown in finding XI of the court's former decision, 76 Ct. Cl. 64, at page 74, there were 57 cubic yards of this excavation. The contract rate for excavation was $17 a yard. In line 2 of Section 2 of the special act, the plaintiff is given the right to recover at "contract rates," hence he recovers $969 for this excavation.

■ Lines 11 and 12 of the special act, read in connection with what precedes them, give the plaintiff the right to recover at contract rates for the excavation and concrete work which the plaintiff had to do because of the contracting officer's direction to omit timber lagging from the side walls of the tunnel. The direction was given to save the Government money, as it would have had to pay for the timber at specified unit prices. But the result was that the walls, being friable, and not being held up by timbers, caved in extensively and the plaintiff was obliged to remove the caved-in materials and fill the spaces with concrete. There were 287 cubic yards of the caved-in materials, and hence 287 cubic yards of concrete. The contract price for concrete was $17 a yard, making $4,879 for the concrete. The contract price for excavation was also $17 a yard. The plaintiff therefore gets an additional $4,879 for removing these materials.

The greater amount of the plaintiff's claim is covered by that provision of Section 2 of the special act which directs us to determine and render judgment at contract rates upon the plaintiff's claim "for the work of excavating materials which caved in over the tunnel arch and for filling such caved-in spaces with dry packing and grout, as directed by the contracting officer, the amount of dry packing to be determined by the liquid method as described by the court[1] and based on the volume of grout actually used, and the amount of grout to be as determined by the court's previous findings[2] based on the number of bags of cement used in the grout actually pumped into the dry packing."

The process of dry packing and grouting consisted of packing all spaces left between the concrete top of the tunnel and the natural earth or rock in place above the tunnel, with dry stones, and then pumping a mixture of one part of cement and two parts of sand, watered to make it flow easily, into the mass of stones. The cement mixture flowed into the spaces between the stones and when it hardened, created a rigid mass which would prevent cave-ins above the roof of the tunnel or the accumulation of masses of water there.

The plaintiff dry-packed and grouted large areas of space above the tunnel. In pouring the concrete roof of the tunnel he left manholes at intervals through which the stones could be lifted and packed into the empty spaces. He placed upright pipes through the concrete, so that the liquid grouting could be pumped up to where it would flow into the packed stones. But no measurement of the spaces so packed and grouted was made before the spaces were filled. At the original trial of the case the plaintiff urged that the volume of the spaces could be deduced from the known number of bags of cement used to make grout to fill the voids in the spaces. It was known that, when any given space was dry-packed with stones, as these spaces were, the crevices between the stones constituted on the average 40% of the packed space. It was known how many bags of cement, mixed with sand and water to make grout as specified, it would take to make a cubic yard of grout. Thus the total number of cubic yards of grout, and of packed and grouted spaces could be computed from the known number of bags of cement used.

The court, in the plaintiff's former suit, thought that computation by this method was not trustworthy, because it thought that large amounts of the grout mixed and pumped had not gone into dry-packed areas at all, but had gone into unpacked spaces in the earth or had been forced out into test holes or caved-in areas above the tunnel. We are now inclined to think that the liquid method of measurement is reasonably accurate. But in any event, the special act has given the plaintiff the right to have it used to measure his recovery, and it is, as a practical fact, the only method by which any measurement at all could now be made.

■ Computed by this method of measurement, the amount of space dry-

---

[1] The reference is to the court's former decision reported in 76 Ct.Cl. 64, at page 75.

[2] The reference is to 76 Ct.Cl. 64, finding III at page 65, and finding VI at page 72.

packed and not otherwise paid for, is 4,746.9 cubic yards. The contract rate for dry packing is $3.00 per cubic yard. The plaintiff may therefore recover $14,240 for dry packing. The number of bags of cement used for grouting, and not otherwise paid for, was 18,790.7. The contract rate per bag for making grout out of the cement, and pumping the grout into place, was $3 per bag. The plaintiff may recover $56,372.10 for grouting.

The plaintiff claims $81,277.00 for "excavation of materials which caved in over the tunnel arch," 4,781 cubic yards at $17 per yard. The volume of these caved-in materials was not measured, and hence would have to be computed by the "liquid" measurement discussed above.

The Government urges that the plaintiff should not recover anything on this item of his claim. It says that, under the contract, the plaintiff was not entitled to be paid for the disposition of any materials which fell from outside the "B" or pay line, and that the special act creates no new cause of action for such work. The contract was explicit on this question. Section 58 of the specifications, quoted in finding 7, contains this sentence: "The contractor shall make all excavations in the tunnel in accordance with reference lines 'A,' 'B,' and 'C' as shown on the drawing and described in paragraph number 33, but with the understanding that no excavation removed beyond the 'B' line will be paid for * * *." The plaintiff's counsel suggests that when materials fell from above the B line into the tunnel space, and were thence removed, they were excavated from within the B line and hence should have been paid for, under the contract. That this was not the meaning of the contract is made plain by Section 48 of the specifications, quoted in finding 7, which shows that the quantities to be paid for were to be measured in place, "according to the lines shown on the drawing or called for by the specifications and by computations therefrom." Thus, materials which fell in from beyond the B line could not have been measured for payment, and were not intended to be so measured. That the plaintiff so understood the contract is also shown by the fact that in his former suit here on the contract he made no claim that the contract provided for payment for removal of such materials, and the fact that in that suit the plaintiff testified repeatedly, as quoted in 100 Ct. Cl. 375, at pages 385, 386, that the only way in which he could

be compensated under the contract for the disposition of this caved-in material was by being paid for dry packing and grouting the space left vacant by the cave-ins.

The plaintiff urges that even though, under the contract, the plaintiff was under a duty to dispose of these materials without any separate compensation, the special act has given him a right to such compensation, and at the full contract rate of $17 per yard provided for excavation within the pay line. This asserted construction of the special act presents several difficulties.

*First,* it imputes to Congress an intention to create in the plaintiff a right to recover upon a claim to which the plaintiff, in the course of a long controversy followed by an extended litigation before the special act was passed, never asserted any right. Instead, the plaintiff had, in the previous litigation, expressly disclaimed any such right, in his testimony referred to above. What the plaintiff was complaining of in his former suit was that the Government had, in breach of contract, refused to pay him for his dry packing and grouting of the spaces left vacant by the cave-ins, and had *thereby* left him uncompensated for the disposition of the caved-in materials, as well as for the dry packing and grouting. The plaintiff did, in the former case, allege misrepresentations by the Government as to the nature of the soil through which the tunnel was to be built, and interferences by Government agents with his dry packing and grouting, by giving conflicting orders and in other ways. The court in the former case awarded the plaintiff the sums of $13,290.22 and $11,225 for unwarranted interference with his dry packing and grouting and with the order in which he did his work, See 76 Ct. Cl. at pages 87 and 100. It decided that the Government had not been guilty of misrepresentation. If the plaintiff urged upon Congress any claim based upon these matters, there is no intimation either in the special act or the committee reports that Congress intended to create, for the plaintiff, rights to recover for them.

*Second.* As we have said, the plaintiff's grievance in regard to disposition of caved-in materials, dry packing, and grouting, throughout the former litigation was that, by being refused payment for the dry packing and grouting at the unit prices, he was being left uncompensated for all of the three related activities. He did not ask

this court to give him separate compensation for disposition of caved-in materials, and on the basis of his whole conduct of the case, and of his personal testimony, no intimation can be found of any legal or moral basis for such a claim. It could not possibly have been error on the part of the court to fail to give the plaintiff something which he did not ask for, and which he expressly disclaimed any right to have. Nor could it have been any defect in the law, or any failure of the law to accord with morals or good conscience, that caused the court not to award him something which he did not ask for. Yet the obvious purpose of the special act was to create specially, for the plaintiff, such rights as a correct decision under the general law, or a decision under law which accorded with good morals, if the general law did not, would have given him.

*Third.* Although we said, in our consideration of the constitutionality of the special act, 100 Ct. Cl. 375, 385, that the act, in effect, directed us to render a judgment for the plaintiff on the item now under discussion, we have, pursuant to the decision of the Supreme Court, given further consideration to the text of the special act and its legislative history, in order to ascertain the intent of Congress.

Section 2 of the act provides that we shall "render judgment at contract rates" for the two categories of work later specified in the section. The first, as we have seen, was excavation and concrete work performed in complying with change orders lowering the B line and omitting timber lagging from the side walls. As to these items, the contract rate is easily applied, since the placing of the concrete and the excavation or removal of the materials must be paid for separately if it is paid for at all. Though the cave-ins from the side resulting from the omission of the timber lagging fell from outside the pay line, the cause of their fall was the action of the Government's agent in omitting the lagging, hence the Government was morally obligated to pay for their removal, and the only applicable contract rate was, as we have said, the excavation rate.

The second item covered by Section 2, for which we are to render judgment at contract rates, is "for the work of excavating materials which caved in over the tunnel arch and for filling such caved-in spaces with dry packing and grout, as directed by the contracting officer, the amount of dry packing to be determined by the liquid method * * * and the amount of grout to be as determined * * * based on the number of bags of cement used * * *."

The contract rate of compensation for disposition of materials caving in from above the tunnel, and for dry packing and grouting the spaces from which they had fallen, was the rate of payment for dry packing and grouting. The specifications, in Section 58, expressly provided that there would be no payment for materials outside the B line. See finding 7. Section 62 provided for payment for dry packing and grouting. The plaintiff intended that his compensation for removal of these cave-ins should come in his payment for filling the spaces. He protested on this ground when it was proposed that the voids be not filled at all, and brought suit on this ground when he was directed to fill the voids, but was not paid for doing so. He testified in the original case:

"The manner provided in the contract for reimbursing me for hauling out of the tunnel whatever rock or earth fell into it was covered in the compensation allowed me for dry packing and grout. * * * The only way I would get paid for removing that earth that fell down was when I refilled it with dry packing and grout *and my price for grout included the cost of removing the earth from the tunnel.*" [Italics added.]

This and other testimony by the plaintiff to the same effect is quoted in our former opinion, 100 Ct. Cl. 375, 385, 386.

[5] In the face of these statements, the truth of which cannot be disputed, we cannot conclude that the "contract rate" for the removal of the caved-in materials was, not only the amounts which the plaintiff had added to his dry packing and grouting unit price bids to cover this very work, but an additional amount, considerably larger than both of the other amounts put together. It is not strange that the plaintiff, and Congress, should have mentioned the excavation, as well as the dry packing and grouting. Throughout the controversy the plaintiff had complained bitterly that he had removed the caved-in materials, and had dry packed and grouted the spaces from which they fell, and had been paid *nothing* for doing all three of the jobs. And he had consistently urged upon the contracting officer, and upon this court that, *under the contract* he was entitled to be paid the unit prices set in the contract for the dry pack-

ing and grouting, and *thereby* be paid for all three of the jobs. There was never any doubt in his mind, or any uncertainty in his claims, in those times, as to what the "contract rate" was. If he had openly presented to Congress a claim to be separately paid $17 a yard for the removal of the materials, *in addition* to the amount of his unit price bids for dry packing and grouting, what possible answer could he have made if the committee had become aware of his former claims and testimony? The inconsistency of the claim with his former position in this court would have undermined the whole basis of his complaint to Congress, which was that the court had erred in denying his claim. We think that in fact he had no intention of making such a claim to Congress, and that we have no right to seize upon the words "contract rates" used in the statute, search the contract for a rate, and apply it to work which the contract itself expressly said, and the plaintiff repeatedly said, carried no separate rate of compensation at all.

It is said that there might be some equity in our finding additional compensation for the plaintiff, because he claimed, unsuccessfully, in his former suit that the Government had misrepresented the geological formation, and that there was more material to be removed, and more dry packing and filling to be done, than he had anticipated. This court, in the former case considered the plaintiff's claim of misrepresentation, and concluded that there had been none. The plaintiff in his statement to Congress did not press any claim of tortious misrepresentation, or suggest that this court had erred in holding that there was none. In his narrative description he speaks of "representations" as to the character of formations, but only to show why it was that there were more units of work than were anticipated. He does say that the specifications "warranted" the geological formations shown on them. The only apparent point of this statement is the same as that concerning the representations. There is no suggestion in his statement that he would not be adequately paid if he received the unit prices set by the contract for the work, even though there were more units of work than had been anticipated. If he had so claimed, it would, presumably, have occurred to the committee that, at least as to the estimated amount of the yardage stated in the specifications, there could be no possible equity

in his claim for separate compensation for excavation, or for damages, because, as to the estimated amount, he knew he would have to remove it and the contract expressly said that he would not be separately paid for doing so.

The plaintiff urges that because there was a much larger volume of cave-ins from above the tunnel arch than had been anticipated, he was put to extra expense in that it was necessary to carry the materials out of the tunnel and then bring back those of the caved-in stones which were suitable for use in dry packing. He urges that this was a prime consideration which caused Congress to give him, in the special act, the right to the full contract rate for excavation for these materials.

In the plaintiff's petition in the former case, K-366, Section VI of the petition, beginning on page 4 of the record of that case, is headed, "Government's Interference With Dry Packing and Grouting." He there narrates various acts of alleged interference which increased his expense, and, at the end of the section, itemizes them and states the amount whch he claims for each. On page 9 appears the following, with regard to the cost of excessive handling of materials:

"(g) Specifications Par. 58 provided that suitable material excavated in the tunnel might be used for dry packing. Plaintiff rightfully expected to use such material as the work progressed and was ready to proceed thus in the untimbered sections on December 2, 1925. There was no storage space in the tunnel and in order to proceed it was necessary either to dry pack or to remove the stone from the tunnel. The officer would not allow the dry packing to proceed and required the stone to be removed from the tunnel and to be brought back again into the tunnel later, which procedure required the stone to be handled 10 more times than would have been otherwise necessary and which handling including 15% for incidentals amounts to $12,598.00."

The commissioner of this court, after hearing the evidence, found, at page 76 of the record of K-366, that the plaintiff's additional expense, including the costs of supervision, for "Extra handling of stone in dry pack," was $7,000. This court, in K-366 in its finding V, 76 Ct. Cl. 64, at page 70, dealt with the plaintiff's claim for damaging interferences with his work. It said, inter alia, in thàt finding: "The contractor had to handle by hand the stone re-

quired for such dry packing several times more than would have been necessary had the contractor been allowed to carry out his plan." After reciting other interferences, the court, at the end of the finding, said, 76 Ct. Cl. at page 72:

"The extra expenses necessarily so incurred by the contractor, including a reasonable allowance for the time of the contractor himself, the wages actually paid the foreman and steady-time men during the period of performance, etc., amount to $13,-290.22."

This $13,290.22 was included in the judgment in K-366 and has been paid to the plaintiff.

The above recital shows, concerning the extra cost of handling rock ultimately used as dry pack, which extra cost is urged as a reason why we should conclude that Congress intended to award the plaintiff a right to $81,277, that (1) the plaintiff in the former case, K-366, asked for only $12,598 for this expense, which amount included 15% for incidentals; (2) the commissioner of this court, after hearing the evidence, found that the extra expense was $7,000; (3) this court, in the former case, included in its judgment for the plaintiff the sum of $13,290.22, which, it is fairly certain from the court's language, included whatever amount of expense the court thought was attributable to the extra handling of stone. We think that the plaintiff did not intend to obtain from Congress a right to $81,277 based upon a claim which he had valued at about one-seventh of that amount in his former suit, and which claim, in some unspecified amount, had been included in the former judgment and paid to him.

We cannot say that the "contract rate" for the disposition of these materials includes, in addition to the $3 per yard for dry packing and $3 per bag of cement for grouting, $17 per yard for removal, which removal the contract expressly provided should not be paid for.

The plaintiff, in his statement to Congress, after quoting the statement of the court that it had no jurisdiction to grant him a new trial after the lapse of so long a time, and that he would have to seek relief, if at all, in Congress, said:[3]

"All he (plaintiff) is asking is that the Congress, which alone has jurisdiction, direct the court to consider the case again and grant him relief as was denied him heretofore, and give him judgment * * *.

"Hence, it is pursuant to the very suggestions made by the court itself, both in its printed decision of December 6, 1937, and in its advices from the bench when the claimant appeared there with his last motion for new trial, that claimant now seeks relief through an act of the Congress which will confer upon the court jurisdiction to readjudicate his case."

In view of this statement to Congress, the plaintiff could not have intended, when he made it, to induce Congress to create in him a cause of action, half of which would consist of a claim not included, but on the other hand, expressly disclaimed by the plaintiff in the former suit.

In the plaintiff's statement to Congress, he treated under separate headings "Court exhibits establishing claim resulting from changes in contract plans," and "Other items of work for which claimant has not been paid." See pages 6, 7, and 8 of Report No. 865, referred to above. Under the second of these headings the plaintiff recites the facts of the cave-ins from the roof of the tunnel, and of the dry packing and grouting, done at the direction of the Government. He quotes the statement of the court that "No payment has been made for any of the dry packing nor grout thus required to be used" and that "We have said that the plaintiff might recover for the total area dry packed and grouted. The obstacle in the way is the lack of proof defining the extent of space dry packed." The plaintiff then says:

"The pending bill would enable the court to determine the amount of dry packing by the so-called liquid method 'as described by the court and based on the volume of grout actually used, and the amount of grout to be as determined by the court's previous findings based on the number of bags of cement used in the grout actually pumped into the dry packing.' From such evidence as has heretofore been presented to the court, and from such additional evidence as may be required, it would seem that the court can reasonably determine what dry packing and grout were supplied by the contractor for which he has never been paid."

There is not a word in this statement about any separate payment for the dis-

---

3 Report No. 865, House of Representatives, 77th Congress, 1st Session, p. 5.

position of the materials which fell in from the top of the tunnel. There is no suggestion as to how the court should measure the amount of these materials, if their disposition was to be separately paid for, though the method of measurement was the very heart of the act, the plaintiff having lost the part of his former suit relating to the spaces left by these cave-ins solely for the reason that the court concluded that there was lack of proof of the extent of the spaces. If we were to conclude that the special act granted the plaintiff a right to a separate recovery for the removal of the caved-in materials, we would be left with no direction, except by inference, as to how to measure the volume of them. We do not think that the plaintiff, in securing a special act written for the particular purpose of meeting a defect of proof which had been fatal to his former case, would have left the measure of half of his recovery to inference. And if the plaintiff and Congress intended that he should have a separate claim for the disposition of these materials, and if they did not intend that we should infer from the silence of the special act that we should measure the cave-ins by the same deductive method by which we were directed to measure the volume of the dry packing, they were deliberately taking a chance that the court would now, as it did in the original case, regard the liquid method of measurement as too untrustworthy to be the basis for a judgment, and that the plaintiff might recover nothing on this item, even under the special act. We have no idea that any such gap was inadvertently left in an act so meticulously drawn to accomplish so specific a purpose.

The Committee on Claims of the House of Representatives, in recommending the passage of the special act, summed up the purpose of the act as follows:[4]

"There is no questioning the fact that he was put to additional items of expense by reason of the change orders of the contracting officer; that the claimant did supply certain dry packing (stones put into place) and grout (liquid cement mortar pumped into the spaces between the dry packing); that this was done under orders and supervision of the contracting officer; and it was accepted by the Government inspectors after inspection thereof.

"The reported bill would enable the court to correct its error; reimburse him for the expenses to which he was put as the result of the change orders; determine the amount of dry packing 'by the liquid method as described by the court and based on the volume of grout actually used' and determine the amount of grout supplied as established 'by the court's previous findings based on the number of bags of cement used in the grout actually pumped into the dry packing.'"

This statement by the Committee shows exactly the items upon which the plaintiff was to be given a right to recover, and the items there recited are the ones on which we have herein given the plaintiff judgment.

We have, hereinabove, allowed the plaintiff $4,879 for excavating 287 cubic yards of materials which fell in from the sides of the tunnel because, at the direction of the Contracting Officer, the timber lagging which would have prevented those cave-ins was omitted. That excavation, for which we allow compensation, is on a different footing from the removal of the materials which fell in from above the tunnel. The former was made necessary by the express direction of the Government to omit the timber lagging which would have prevented it. The provision of the contract that payment would not be made for "excavation removed beyond the 'B' line" would not, in equity, excuse the Government from paying for such excavation if it was made necessary by the Government's direction. The special act expressly states that this work was "found by the court to have been performed by the said Pope in complying with certain orders of the contracting officer." The court's finding XI, 76 Ct. Cl. 64, 74, bears this out. That finding also shows exactly how many yards of this excavation there were, and the contract rate for it. The plaintiff, in his former suit claimed this amount, and failed to recover it only because the order of the contracting officer did not comply with the formalities required by the contract. 76 Ct. Cl. 96, 97. Payment for the concrete which filled the spaces left by these cave-ins was never intended to include payment for the removal of the caved-in materials.

On the other hand, the cave-ins from above the tunnel were, as we have said, not

[4] House Report No. 865, 77th Congress, 1st Session, p. 3. The Senate Report was identical. Senate Report No. 1019, 77th Congress, 2nd Session, p. 2.

the result of any direction of the Contracting Officer; they were expressly excluded from payment by the contract; payment for their removal was not sought in the former suit except as such payment would be included in payments for dry packing and grouting the void spaces; no direction is given in the special act as to how their volume should be measured, unless that direction is obtained by inference; the committee report lacks any suggestion or hint that their removal is to be paid for, in addition to payment for dry packing and grouting. Our different treatment of the two items of excavation, then, is not only justified but compelled by the plaintiff's different treatment of them throughout this long controversy, and by the whole history of the former litigation and the special act.

In Central Transportation Co. v. Pullman's Palace-Car Co., 139 U.S. 24, 49, 11 S.Ct. 478, 484, 35 L.Ed. 55, the Supreme Court said:

"By a familiar rule, every public grant of property, or of privileges or franchises, if ambiguous, is to be construed against the grantee and in favor of the public; because an intention, on the part of the government, to grant to private persons, or to a particular corporation, property or rights in which the whole public is interested, cannot be presumed, unless unequivocally expressed or necessarily to be implied in the terms of the grant; and because the grant is supposed to be made at the solicitation of the grantee, and to be drawn up by him or by his agents, and therefore the words used are to be treated as those of the grantee; and this rule of construction is a wholesome safeguard of the interests of the public against any attempt of the grantee by the insertion of ambiguous language, to take what could not be obtained in clear and express terms."

See also 2 Lewis' Sutherland Statutory Construction, 2nd Ed. Sec. 548; Crawford Interpretation of Laws, Sec. 245.

It is said that the jurisdictional act under which we are proceeding is plain and unambiguous. The length of the opinions which it has evoked seems to throw doubt upon that proposition. And of course the act cannot be applied and was never intended to be applied without examining the contract and the findings and opinion in the former suit to which the act refers. When we consult the contract, as we must, to ascertain the "contract rates" and find

that the contract rate for excavating materials from inside the pay line is $17 a yard, but that the contract says, "no excavation beyond the 'B' line will be paid for," it would seem that we are faced with a problem of construction. If we at that point were inclined to be literal and to rely on "plain meaning" we would have to say, without further investigation, that the plaintiff was to get nothing for the excavation of the caved-in materials. We would not, however, be justified in stopping there, without ascertaining whether that literal, or "plain meaning" construction did not thwart the intention of Congress. So we go further into the relevant data to find out what the actual intent of the statute is, consistent with its language. We find that, as the plaintiff understood the contract when he bid for it, the contract rate for removing caved-in materials was included in the unit prices which he bid for dry packing and grouting, so that if he gets paid for those processes he will have been paid the "contract rate" for excavating the materials. We find that the plaintiff, in pressing his claim before Congress, summed up the purpose of this part of the bill as enabling the court to give him a judgment for his dry packing and grouting. We find that the Committee summed up for Congress the purpose of the bill in substantially the same language. We therefore see no sufficient reason to hold that, after we have given the plaintiff a judgment which pays him, according to his repeated statements, for excavation, dry packing, and grouting, at contract rates, we should add to that judgment an additional sum, again paying him for one of the three operations for which he has already been paid, but the second payment being in an amount substantially larger than the "contract rate" for all three operations put together.

The plaintiff's statement to Congress, the Committee reports, and the special act are completely consistent with the plaintiff's claims and testimony in the former suit. They point to items on which the plaintiff sued but failed to recover in the former suit. As to those of the grounds upon which recovery was denied for lack of proof, they prescribe what should be adequate proof in this suit. They do not intimate that he is to recover more now than he could have recovered then even if the court or the law had not then been unduly technical. When we so interpret

the special act as to make the plaintiff's former claims and testimony, his former failure in this court, his statement to Congress, the report of the Committee, which that statement induced, and the special act, one consistent whole, we have no doubt that we are giving to the plaintiff the full measure of relief which Congress intended him to have.

The plaintiff may recover $81,339.80. It is so ordered.

WHALEY, Chief Justice, and JONES, Judge, concur.

LITTLETON, Judge (dissenting in part).

I concur in the opinion allowing plaintiff compensation under the Special Act at contract rates (1) for excavation and concrete because of materials that caved in at the side of the tunnel wall and the lowering of the "B" line, (2) for dry packing certain areas of the caved-in space over the tunnel arch, and (3) for grouting such dry-packed space, but I cannot concur in the conclusion that the special jurisdictional act does not assume an obligation for and does not authorize the court to allow plaintiff compensation at the contract rate "for the work of excavating materials which caved in over the tunnel arch," to the extent the proof shows the amount of such caved-in material.

Sec. 1 of the Special Act, 56 Stat. 1122, confers jurisdiction to hear, determine, and render judgment upon the claims of Allen Pope against the United States, "*as described* and *in the manner* set out in section 2 hereof." [Italics supplied.]

Sec. 2 proceeds to *describe* the claims and states that the compensation determined to be allowable under the obligation assumed as to the claims mentioned shall be at contract rates.

A study of the language of sections 1 and 2 shows, I think, that Congress authorized and directed the court to hear and determine, on the basis of the evidence, and to allow at contract rates such compensation as should be determined, on the basis of quantity, on all four claims, as follows:

" * * * namely, [at contract rates] for the excavation and concrete work found by the court [in the previous case] to have been performed by the said Pope in complying with certain orders of the contracting officer * * *; *and* [at contract rate] *for* the work of excavating materials which caved in over the tunnel arch *and* [at contract rates] *for* filling such caved-in spaces with dry packing and grout, as directed by the contracting officer, the amount of dry packing to be determined by the liquid method as described by the court and based upon the volume of grout actually used, and the amount of grout to be as determined by the court's previous findings based on the number of bags of cement used in the grout actually pumped into the dry packing." [Italics supplied.]

It will be seen that the language of the act separates each claim by the provision "and for" and impliedly repeats as to each claim the provision "at contract rate." The fact that the work of excavating the caved-in material and the work of dry packing and grouting the caved-in space over the tunnel arch were to some extent related items, because the dry pack and grout replaced some of the caved-in material, is not sufficient in view of the language of the act to warrant the exclusion of compensation for the work of excavating such materials. The character of the work on each item was different. Each item involved independent labor and separate expense, and it was not necessary for the act to mention the excavation work in order to provide compensation for dry packing and grouting. Since there was a separate contract rate for each of these three items, and since Congress knew this from plaintiff's petition for relief, it would seem obvious that if Congress had not intended that the work of excavating the caved-in material be compensated for, as a separate item, it would not have mentioned that work at all. Since this item of excavation work was *described* as one of the claims to be compensated for *in the manner,* i.e., at the contract rate specified, the court has no alternative but to allow it to the extent of the amount of material excavated, since it is admitted that such material was removed.

A very large amount of material caved in from over the tunnel arch because of the geological formation encountered, which material had to be excavated from the tunnel in addition to the material which caved in from the spaces dry packed and grouted for which claim is made, but no measurement of the total amount of caved-in material was made at the time, and plaintiff claims, because of the impossibility of proof, compensation as for excavation

for only such material as caved in from the space dry packed and grouted, the amount of which can be measured with reasonable accuracy by the "liquid method." Plaintiff's petition to Congress shows, as hereinafter stated, that he was claiming therein compensation only for the work of excavating the material which caved in from the space dry packed and grouted, which material, according to the undisputed record, was a great deal less than the total amount of material which actually caved in and was removed. It seems reasonably clear that plaintiff's reason for so limiting his claim to Congress for compensation for this excavation work was because that amount of material was susceptible of proof, whereas the total amount of material which caved in could not be proven.

The committee report, hereinafter mentioned, on the special act is consistent with the above-mentioned interpretation in accordance with the ordinary and natural meaning of the language used in the act, but the reasoning in the majority opinion against this interpretation requires that certain additional matters be discussed.

While sec. 2 does not specifically state that the amount of excavated material which caved in over the tunnel arch is to be measured by the "liquid method" specified for measuring the space dry packed and grouted, neither does it prohibit its use. The method of determining the amount of caved-in material excavated is left open for determination by the court upon the evidence, since the court had not previously determined this one way or the other. In the previous case the court denied the claim for damages in which practically all, if not all, the extra cost of removing the caved-in material was included. The matter of measuring the amounts of dry pack and grout put into the caved-in space was specifically specified by Congress, because the court in deciding this claim for dry pack and grout had previously rejected the only method available for determining the amount of dry pack and grout. The provision that the court shall also determine the amount of compensation due at the contract rate for the work of excavating the caved-in material leaves the court free to determine the amount thereof by the use of the method specified for measuring the space dry packed and grouted, or some other method which it may find satisfactory for measuring the number of cubic yards of caved-in material. The important thing is

that the act provides for the determination of this claim and the amount due thereon at the contract rate. Under the act the court may, if necessary, measure the cubic yardage of the caved-in material removed and to be paid for by applying thereto the exact number of cubic yards of caved-in space (liquid measurement) determined to have been dry packed and grouted; but it is not required to do this if there is in the record sufficient evidence to enable the court more accurately or satisfactorily to determine the cubic yardage of material which caved in from such space, either by using the liquid method or otherwise. The contract between the parties discloses they contemplated that due to normal overbreakage of rock there would probably be not more than approximately 300 to 500 cubic yards of space outside the "B" line to be concreted or dry packed and grouted, but the handling of the material from such overbreakage was not to be paid for as excavation since it was contemplated that, except for about 500 feet at the end of the tunnel, the entire length of the tunnel of 3,540 feet would be in solid rock, and that rock sufficient to dry pack such space would not have to be removed from the tunnel and brought back. As a matter of fact very little, if any, of the roof of the tunnel was in solid rock that would hold without considerable cave-ins. The removal of such material was not, therefore, considered an item of expense of any importance. Cave-ins were not contemplated or mentioned. Par. 58 of the specifications simply stated that "No excavation removed beyond the 'B' line will be paid for." Plaintiff did not "excavate" beyond the "B" line and the court so held in K-366—the material caved in because of its character and unstable condition.

Par. 48 of the specifications required the contracting officer to keep a record of the measurement of such spaces as were caused by such overbreakage which were to be paid for, as refilled, at the contract rates for concrete, dry packing and grouting. The Government did not measure the caved-in space over the tunnel arch, other than by the liquid method which the contracting officer adopted. Since it was impossible after all of the caved-in material had been excavated from the tunnel and the space from which some of the caved-in material had come had been dry packed and grouted to prove by any other method the number of cubic yards in such space which would

equal the number of cubic yards of material which caved in from such space, the Government is not now in a very favorable position to object under the special act to the use of the liquid method of measurement. That the liquid method of measurement is a recognized and reasonably accurate method of measuring, under normal conditions, the number of cubic yards in a particular space dry packed and grouted and of measuring the number of cubic yards of earth or rock that came out of such space is not denied by anyone. If it appears from the evidence that all or substantially all of the grout used in a caved-in space dry packed and grouted filled only the dry-packed voids in the space from which material caved in and did not go elsewhere, or beyond such space, then the cubic yardage of such space measured by the liquid formula, or method, would accurately represent the cubic yardage of material that caved in therefrom. The contracting officer suggested, adopted, and used that method for determining the number of cubic yards contained in the caved-in space which was dry packed and grouted to the extent to which he made payment therefor, and the only question now for determination under the item of the claim under the special act for excavating the caved-in material (if such claim is within the authority conferred by the terms of the act) is whether the cubic yardage of the space dry packed and grouted determined by the liquid method reasonably or fairly represents the cubic yardage of the caved-in material removed. The matter of measuring the amount of such caved-in material from the dry-packed space will be further discussed later herein.

Defendant argues that sec. 2 of the Special Act is ambiguous, but I do not think it is when its language is given its natural and ordinary meaning as Congress appears to have intended; and it is further contended by defendant that "This claim [for excavating caved-in material] is completely untenable for the reason that payments made (or to be made) for the area thus dry packed and grouted also cover the work of excavation, and nothing in the Special Act requires dual payment for this item." This claim of ambiguity only arises if an attempt is made to read out of the act one of its provisions which, according to its language, calls for an allowance at the contract rate for excavating caved-in materials; and the claim that

payment for the work of excavating such material is not authorized by the special act can find support only on the view that Congress did not mean what the act said; that it was intended by Congress that the court should compensate plaintiff only for those items of work for which he might have been, but was not, paid by the contracting officer under the terms of the contract, and that the claims of Pope for excavating the caved-in materials and for dry packing and grouting the caved-in space were all one claim for compensation at contract rates of $3 a cubic yard for dry packing and $3 a bag for cement grout only, and not for the additional work of excavating or removing the large and unexpected amounts of caved-in materials. If the Special Act did no more than to grant or direct a new trial and specify the basis of payment on claims which could be compensated for under the strict provisions of the contract between the parties, these contentions of defendant that plaintiff should not be compensated for the work of excavating the caved-in materials would carry weight, but the Supreme Court held that the act did not intend to grant or direct a new trial but assumed an obligation to compensate plaintiff for certain claims as to which no obligation then existed.

It is, of course, admitted that there was a contract rate for excavation, and it is also admitted that with respect to the first claim of plaintiff this rate of $17 a cubic yard for excavation must be applied to the removal of material that caved in from the sides of the tunnel in addition to $17 a cubic yard for concreting such caved-in space. It is further admitted that if the work of excavating the material which caved in over the tunnel arch is to be compensated for, the contract rate of $17 a cubic yard must, under the terms of the act, be paid therefor. For the work of excavating the caved-in material and concreting the caved-in space at the side of the tunnel, plaintiff receives $34 a cubic yard, whereas for the excavating, dry packing and grouting, which was no less difficult and important and caused more expense for labor and material than was anticipated, and of which work the Government also received the benefit, plaintiff will receive a total of $23 a cubic yard.

The Supreme Court in Pope v. United States, 323 U.S. 1, 65 S.Ct. 16, 21, said that: "The Special Act did not purport to set aside the judgment or to require a new

trial of the issues as to the validity of the claims which the Court had resolved against petitioner. * * * the Act's purpose and effect seem rather to have been to create a new obligation of the Government to pay petitioner's claims where no obligation existed before." In other words, the provisions of the act show that Congress named the claims to be considered and determined, and specified the rates to be applied in measuring compensation on the claims so described for which it was assuming an obligation independent of the previous decision of the court, as well as the technicalities of the contract provisions. In doing this Congress authorized and directed the use of a certain method of measurement which the court had previously rejected for the purpose of fixing the allowable compensation for dry packing and grouting certain of the caved-in space over the tunnel arch. Since the court had not passed upon the matter, as a separate item, of measuring the amount of caved-in material excavated, it was not deemed necessary for the act to specify the basis, or method, of measurement thereof. The approval by Congress of this method of measurement for the purpose specified permits its use to the extent applicable for measuring the amount of caved-in material removed and to be paid for, since, as to that claim, Congress not only recognized but stated in section 2 that the only material for which plaintiff was to be compensated as for excavation was that amount of the material which caved in from the space over the tunnel arch which was dry packed and grouted. As above stated, large amounts of material other than that which came from the space dry packed and grouted were also removed, but that material is not included in the terms of the act. The proof of record shows, and it is admitted, that at more than two places over considerable areas great amounts of material caved in from over the tunnel arch all the way to the surface of the earth which was from 40 to 100 feet above the tunnel arch; that caved-in material had to be removed from the tunnel, and, in addition, these caved-in spaces had to be refilled with earth from above. The material that came from the space dry packed and grouted was only a very small part of the material which caved in and had to be excavated. Plaintiff included his extra excavation costs and expenses in the claim made by him in Section XV of the petition in K-366, but in his petition to Congress limited his claim for compensation for excavation not paid for to the amount of material which caved in from the space over the tunnel arch which was dry packed and grouted.

The only difference between the method of measuring the space dry packed and grouted by the liquid formula and the method of measuring the caved-in space at the side of the tunnel by the concrete method is that all the concrete used filled completely the caved-in space, whereas, in the case of grouting, some of the grout found its way under pressure into rock fissures or seams, or into a test hole, from which spaces there was no caved-in material to be removed. Because of this and because the Government had the benefit of the work, the liquid method of measuring dry pack and grout to be paid for at contract rates was specified. But the direction in the act that the amount of dry pack and grout to be paid for be so measured does not prove that Congress intended that plaintiff was not also to be allowed compensation at the contract rate for the specified work of removing the material which caved in from such space, for which work the Government also received the benefit, and which was directed by the contracting officer. By providing that the court determine plaintiff's claim "for the work of excavating materials which caved in over the tunnel arch" and compensate him therefor at the contract rate, the act leaves the court with no alternative in the circumstances other than the use of the liquid method for measuring as accurately as possible the amount of material which caved in from the space dry packed and grouted, but, as hereinbefore stated, the court is left free by the act to apply its best judgment to the question whether, in all the circumstances and under all the evidence originally submitted and later submitted under sec. 3 of the act, that method, or some modification of the number of cubic yards shown by it, fairly and reasonably shows the amount in cubic yards of the caved-in material removed. As hereinafter shown, the amount of the material which caved in over the tunnel arch can, under the evidence of record, be ascertained with reasonable accuracy by the liquid method of measurement.

I do not think that payment for excavating the comparatively small amount of caved-in material results "in dual payment" for this item, as defendant contends, but whether it does or not, if Con-

gress has provided for it, as I think it has, the propriety or wisdom of that action may not be questioned by the court. It is true, and Congress evidently knew that the original contract did not provide for payment as for excavation of material which fell in from over and beyond the "B" or "pay" line of the tunnel, either at the sides or over the tunnel arch, but the evidence of both parties shows they contemplated that only a small amount of material outside the "B" line would fall into the tunnel from normal overbreakage in blasting or in excavating, and that the rock material beyond the "B" line over the tunnel arch could and would be kept in the tunnel as the work progressed and later would be used as dry packing and would not, therefore, have to be removed from the tunnel and later be brought back at considerable extra expense. When more than ten times the expected amount of material caved in solely from the space dry packed, which was mostly earth and rotten or soft rock, and, by direction of the contracting officer, had to be removed and hard rock suitable for dry packing later brought back, there was considerable extra expense incident thereto.

The fact that the act, as the Supreme Court said, was "inartistically drawn," may not be availed of to exclude allowance on a claim which reasonably appears to be within its terms. The way in which the act is drawn makes it necessary, I think, to read the first clause of sec. 2, i.e., "The Court of Claims is hereby directed to determine and render judgment at contract rates upon the claims of the said Allen Pope," into each of the four claims described following the word "namely." When this is done the item for excavating the material which caved in over the tunnel arch from the space dry packed and grouted stands out as one of the claims. That this is necessary is shown, I think, by the language of section 2 naming the claims to be determined and paid for.

As to the first claim, the act says, following the word "namely," "*for the* excavation and concrete work"; following this it says "*and for* the work of excavating materials which caved in over the tunnel arch"; it then says "*and for* filling *such caved-in spaces* with dry packing and grout." [Italics supplied.] Thus, it will be seen that the claims to be determined and compensated for at the "contract rates" were separately described and the court must give effect to all the provisions of the act. If Congress had intended that the court should compensate plaintiff at contract rates only for excavation and concrete work at the sides of the tunnel and for dry packing and grouting the caved-in space over the arch, it would have had no occasion to mention the work of excavating the material which caved in from over the tunnel arch, and I think, if it had so intended, that matter would not have been mentioned or included in the act.

As I understand the majority opinion, the reason or ground for denying the right of plaintiff to recover on the item of his claim for excavating the caved-in material is, in substance, that plaintiff did not make or intend to make such a claim to Congress, and that although the act states that he is to be compensated "for the work of excavating materials which caved in over the tunnel arch," the history of the act, as disclosed by the committee report and the "Statement of Allen Pope," set forth in the committee report, does not show that Congress intended by this language that an allowance should be made as compensation for this work in addition to compensation at $3 a cubic yard for dry packing and $3 a bag for cement grout placed in caved-in space over the tunnel arch.

I do not think the act should be so interpreted under the well-established rule that a statute is to be interpreted and applied in accordance with the ordinary and natural meaning of the language used where the provisions of the statute are plain and unambiguous, and I think we have such a case here. Scott v. Ben, 6 Cranch 3, 7, 3 L.Ed. 135; Carter's Heirs v. Cutting, 8 Cranch 251, 252, 3 L.Ed. 553; Kirk v. Smith ex dem. Penn, 9 Wheat. 241, 272, 6 L.Ed. 81; Gardner v. Collins, 2 Pet. 58, 92, 7 L.Ed. 347; Merchants' Insurance Co. v. Ritchie, 5 Wall. 541, 545, 18 L.Ed. 540; Lake County v. Rollins, 130 U.S. 662, 670, 671, 9 S.Ct. 651, 32 L.Ed. 1060; Bate Refrigerating Company v. Sulzberger, 157 U.S. 1, 37, 15 S.Ct. 508, 39 L.Ed. 601; United States v. Riggs, 203 U.S. 136, 139, 27 S.Ct. 39, 51 L.Ed. 127; Pennsylvania Railroad Company v. International Coal Mining Co., 230 U.S. 184, 190, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315; St. Louis, Iron Mountain & Southern Railway Co. v. Craft, 237 U.S. 648, 661, 35 S.Ct. 704; Caminetti v. United States, 242 U.S. 470, 490, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas.1917B, 1168; Thomp-

son v. United States, 246 U.S. 547, 551, 38 S.Ct. 349, 62 L.Ed. 876; Standard Fashion Co. v. Magrane-Houston Company, 258 U.S. 346, 356, 42 S.Ct. 360, 66 L.Ed. 653; Takao Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199.

Since the act shows by the language used that plaintiff, as he claimed in his petition to Congress, is to be compensated at the contract rate for excavation, for the work of excavating only the material which caved in from the space over the tunnel arch which was dry packed and grouted, and not for the work of excavating all the material which actually caved in from other spaces over the tunnel arch, I think we should give full effect to the specific direction given in the act.

Plaintiff pointed out in his petition or statement to Congress, which is quoted in the committee report, that there were unit-price contract rates for excavation, for concrete, for dry pack and for grout. I do not therefore see how the court can allow compensation at contract rates for the three claims—(1) excavation and concrete, (2) dry packing, and (3) grout,—named in the act and decline to allow any compensation "for the work of excavating materials which caved in over the tunnel arch" without, in effect, reading this provision out of the statute or holding that Congress did not mean what the act plainly said. Plaintiff further pointed out in his statement to Congress that all the claims, which were subsequently mentioned in the act, were before this court in his original case and had been denied, and that was true. He also pointed out at length the difference between the materials as recorded on the contract drawing and those encountered, and the large amount of caved-in material that had to be excavated from the tunnel by direction of the contracting officer. Plaintiff also included in his petition to Congress, as hereinafter shown, a claim that he had not been fully compensated for timbers used in the tunnel, which was a contract item for which he was entitled to payment, but this item of the claim for timber was not included in the Special Act. Neither did the act include anything for delays and prolongations of the work which plaintiff also pointed out to Congress. Plaintiff had claimed originally in K-366 an additional amount of $5,236.30 for 52,363 feet of lumber, b. m., at 10 cents a foot, and the court allowed $2,500.

Plaintiff originally made claim in this court for compensation on all four items of work named in the Special Act, as he pointed out to Congress, and these are the claims which, under the act, the court is directed to determine and upon which it is to render judgment at contract rates; the claim for work of excavating or removing the total amount of material which caved in over the tunnel arch, which could not under the terms of the contract be made in the original case as a contract item, was included by plaintiff in the claim originally made in this court for breach of contract through alleged misrepresentations as to the character of materials to be encountered in excavating for the tunnel.

In this claim made in Section XV of the petition in K-366 plaintiff asserted and attempted to prove that because of the changed and unexpected conditions as a result of which the cave-ins occurred, for which he claimed the defendant was responsible, he was delayed 200 days and incurred extra costs for labor, etc., in the net amount of $85,915. In his first motion for a new trial in K-366, filed May 6, 1932, after discussing the disallowance of this claim by the court, plaintiff insisted as follows:

"The net additional cost to the contractor for excavation, on account of the geological formations being different than represented, was $85,915.

"Damages Checked—Another Basis for Claim

"A check on this figure and a basis upon which plaintiff might reasonably make claim, in lieu of upon the basis of misrepresentation, is for that excavation which fell into but was excavated only from within the 'B' line. * * * The proof discloses that 5,561 cubic yards of space were dry packed and that this space was created by the materials falling into the space within the 'B' line. It is established that not any of this material was excavated outside the 'B' line. So that in addition to the material which originally occupied the space within the 'B' line, and which has been paid for, 5,561 cubic yards more were actually excavated within the 'B' line and have not been paid for. At the price bid by the contractor, namely, the contract price of $17.00 per cubic yard, this amounts to $94,537.

"Both of these bases for damages, i.e., (1) damages because of misrepresentation,

and (2) excavation actually made within the 'B' line, grow out of the same cause, namely, that the ground was loose and fell in. The latter explanation comes strictly within the letter of the specifications."

It seems clear enough to me that in plaintiff's statement which the Claims Committee incorporated in its report on the special act, plaintiff, in his petition to Congress for relief, adopted and asked compensation on account of the caved-in material on the second basis above mentioned in his motion for a new trial after pointing out the changed and unexpected conditions encountered, and the special act, which provides for compensation at the contract rate for excavating this material, is in accord and consistent with this claim of plaintiff in his petition for relief.

I think it must therefore be held from the history of the Special Act that plaintiff did make claim to Congress that he be compensated through a special act for this excavation work. It would seem from the representations made by plaintiff in his written statement, as set forth in the committee report, and by the language used in the act, that Congress concluded plaintiff should at least receive compensation for this work of excavating the material which caved in from the space dry packed and grouted, and therefore specified the contract rate for excavation as the basis for such payment. It would seem that Congress would not have provided in the act for compensation for excavating this material unless it understood from Pope's petition for relief, through a Special Act, that he was claiming compensation for this work.

As to the work of excavating or removing the caved-in material, the majority opinion says that "plaintiff intended that his compensation for removal of these cave-ins should come in his payment for filling the spaces" and makes reference to certain excerpts from plaintiff's testimony quoted in 100 Ct. Cl. 375, 386, with reference to his claim in the original case (76 Ct. Cl. 64) for compensation under the contract items of dry packing and grouting. But I do not think those excerpts are helpful or important in interpreting the Special Act. Any consideration of plaintiff's testimony in the original case in connection with what he was claiming in his petition to Congress should include all of his testimony, and not merely excerpts. It must be remembered, when considering the testimony referred to, that in the original case plaintiff had other and separate claims which he was pressing, and which included compensation for extra costs and expenses for removing the large amount of caved-in material and other unanticipated expenses in connection with and by reason of the extensive cave-ins and on account of delay amounting in one instance to $66,782.45 concerning interferences with dry packing and grouting, and, in another, to $85,915 for extra costs and damages because of the cave-ins. Plaintiff's original testimony concerning what his prices for dry packing and grouting were intended to cover was obviously, as he now urges, with respect to the original estimated "overbreakage" of rock of not more than 500 cubic yards throughout the tunnel of which amount less than 200 cubic yards would, in any event, have had to be ultimately disposed of other than by its use as dry packing; and, if the spaces vacated by the timbers had to be dry packed, as they were, practically none of the original estimated "overbreakage" of rock would have had to be handled extra or removed from the tunnel. Obviously, therefore, there were no cave-ins nor excavation expenses anticipated by or intended by plaintiff to be included in his bid prices for dry packing and grouting. There were many items of expense in connection with dry packing and grouting other than the cost of the cement used. Moreover, in view of what occurred with reference to the large amount of caved-in material, most of which was earth, as compared to what the parties expected with reference to the small amount of "overbreakage" of rock, and in view of the overall time of 200 additional days consumed and the expenses incurred, the bid prices for dry packing and grouting cannot be regarded, and, evidently, they were not regarded by Congress as having been intended to cover the unanticipated and excess costs incurred. Plaintiff so testified in the original case in connection with the item of his claim for $85,915 in which these extra excavation expenses, except a portion for extra and unnecessary handling of rock used for dry pack, were included, and that testimony is not refuted.

As hereinafter pointed out in more detail, plaintiff, in his petition to Congress for relief, set forth under the third heading

thereof that "During excavation, the ground caved in over the crown of the tunnel arch, such caved-in spaces were to be filled with stones packed in place, called dry packing," and, under the fourth heading, that "The roof of the excavation caved in for the full length of the tunnel, 3,533 feet. * * *. Thus, more excavation resulted than had been expected. Next, the caved-in spaces had to be refilled with dry packing and grout, * * *. The items of expense which the contractor did incur had not been anticipated to such an exent by the Government or by the contractor; these items were the cost of removing all caved-in material from the tunnel, * * * and the cost of replacing the caved-in spaces with the specified dry packing and grout." Under the sixth heading, he stated that "As a result of this condition [unstable material] he was required to excavate material which caved in over the tunnel arch, and then to refill the caved-in spaces with dry packing and grout."

Congress evidently considered in connection with the Special Act that in all the circumstances, which were not expected by either party as plaintiff pointed out in his petition for relief, and in view of plaintiff's claims in that petition, there was a sufficient moral obligation to justify the assumption of a legal liability for certain extra work performed and expense incurred on account of this additional excavation, and concluded to measure the compensation to be allowed plaintiff by the court at the contract rate for excavation with respect to much of the caved-in material as came from the space dry-packed and grouted.

The majority opinion also makes reference to sec. VI of plaintiff's petition in the former case, K-366, quoting item (g) thereof, and also quoting a part of finding 5 of the court in that case (76 Ct. Cl. 64, 70) in support of the position that plaintiff in his petition to Congress did not make, or intend to make, a claim for compensation for the work of excavating caved-in materials.

I think, first, that in view of plaintiff's claim in his petition to Congress and the language of the act this reference to the record in the prior case is not important or necessary in interpreting and applying the Special Act according to its provisions; second, I think the quoted references when analyzed fall far short of indicating that

which they are said to establish; third, the record in the original case satisfactorily shows that plaintiff was not claiming in item (g) compensation or expenses for excavating caved-in materials, as such, but only for extra expenses incident to interferences with the work of certain dry packing which resulted in needless extra handling of stone necessary for this particular portion of the space dry packed; fourth, it does not appear from finding 5 and the opinion of the court in the prior case that the stone referred to represented caved-in material, or what amount, if any, was allowed on account of extra handling of this stone used in dry packing only 2,191 cubic yards of space over the tunnel arch; or, whether, if the court did allow any amount on account of this item, the extra expense of removing it from and bringing it back into the tunnel was included.

In the original petition plaintiff, in section IV, entitled "Cement grout," claimed $56,775; in section V, entitled "Dry packing," he claimed $14,304, as contract items at contract rates; and in section VI, entitled "Government's interferences with dry packing and grouting," plaintiff claimed $66,845.12 under nine separate items; the seventh, or item (g), is quoted in the majority opinion. Under this claim plaintiff alleged and proved, among other things, the following: "The contracting officer gave five (5) different orders with respect to the performance of the work of dry-packing and grouting. He changed the requirements with each order. He prevented performance within the contract period and required performance after expiration of the contract period, thus involving additional expense that would not have been incurred nor necessary had he permitted performance within the contract period, when plaintiff was ready and able and demanded to be allowed to perform in the manner agreed upon in the contract and which manner was the method ultimately used."

The commissioner of this court made finding 5 in which he listed the nine items and the amounts allowed by him in respect thereof, totaling $44,290.22. The court substantially adopted finding 5, except the tabulation of the items and the amount allowed as to each. The commissioner's tabulation in his finding and the amounts asked by plaintiff under section VI of the petition in the former case, are as follows:

| Items | Allowed by Commissioner | Claimed by Plaintiff |
|---|---|---|
| 945 extra grout pipes, actual cost, $1,159.95 with 15 percent added for overhead, etc. | $1,333.22 | $1,333.22 |
| Third or smaller set of grout pipes, material only, with 15 percent | 138.00 | 138.00 |
| Drilling out old grout pipes, restoring tracks, etc., with 15 percent added | 4,769.00 | 4,769.90 |
| Additional cost of grouting after February 11, 1927 | 9,000.00 | 14,686.00 |
| Extra grout pumps | 800.00 | 800.00 |
| Extra cost of handling cement and sand for grout (loss of sacks) | 750.00 | 750.00 |
| Extra handling of stone in dry pack | 7,000.00 | 12,598.00 |
| Other fixed expense after December 24, 1926, not included in foregoing items, no part of which would have been necessary except for the contracting officer's orders needlessly prolonging the work after said date | 18,000.00 | 28,109.47 |
| Cost of so-called waterproofings, etc. | 2,500.00 | 3,598.76 |
| Total extra cost of interference | 44,290.22 | 66,782.45 |

Item (g) related to extra costs due to ten extra and needless handlings of rock used for dry packing only 2,191 cubic yards of space in the "rock section," and about one-half of these extra and needless handlings were shown to have related to the needless handling of the dry-packing stone because of the requirements and the conflicting and changed orders and directions by the contracting officer about the dry-packing work. The other half of the extra handlings of this stone appears to have related to taking the stone out of the tunnel and bringing it back. Plaintiff proved fifty cents a cubic yard for each handling, or a total of five dollars a cubic yard, which, with 15 percent added for overhead and incidentals, amounted to $12,598. The commissioner allowed the round figure of $7,000 on account of this item, which, it appears, was the cost of approximately one-half of the extra handling of this stone by hand, plus 15 percent. A study of the petition and the record in K-366 shows that this item (g) related only to extra expenses with reference to dry packing and, on its face, it did not relate and there is nothing in the record to show that it related to or included any of the extra costs of the work of excavating the caved-in material from over the tunnel arch. Those costs were included by plaintiff in his claim for damages under sec. XV of the petition. Plaintiff's plan, with which the contracting officer unreasonably interfered, contemplated the use of sufficient stone from rock excavation within the "B" line, or from normal overbreakage to dry-pack whatever space was necessary without needless extra handling of such dry-packing stone, and item (g) referred to this unnecessary extra expense resulting from such interference, rather than the extra costs and expenses of removing caved-in material, as such extra costs were included in the claim made in sec. XV of the petition. The commissioner (and the court, if it allowed any amount on account of this item) appears to have made the allowance on that basis, inasmuch as approximately one-half of extra handling cost was excluded. No assertion or claim was ever made that plaintiff was making a double claim in sec. VI, par. (g), and sec. XV of his petition, in K-366, on account of extra work and expenses incident to and caused by the caved-in material.

In addition to this disallowance by the commissioner of $5,598.29, claimed by plaintiff under item (g), the record shows that this particular dry-pack stone, assuming that it was caved-in material, was only a very small portion of the caved-in material excavated, and was much less than the amount of caved-in material from the earth sections of the tunnel, which caved-in material was also excavated. Those earth sections were dry packed with stone from rock excavation as the work progressed, and amounted to 3,370 cubic yards. All costs resulting from the extra work and time on account of the large amount of caved-in material were included and claimed by plaintiff in sec. XV of the petition entitled "Misrepresentation." Under this section plaintiff claimed increased daily costs for delay and extra work due to cave-ins and unexpected conditions encountered of $433 a day, including his own time and equipment rental, and which also included proven labor costs of $242 a day. Outside of allowance for plaintiff's time and equipment rental, his actual proven daily costs under sec. XV were $283 a day, or $56,660 for 200 days' delay in completion of the work. With such allowances his costs for that period were $99,590, from which amount he deducted $13,865 to cover the amount included elsewhere in the petition on account of delay incident to the cave-ins and the

amount which defendant had paid him for some extra work during the delay period.

From the above it will be seen that, even if the court in its finding 5 and the opinion in 76 Ct.Cl. 64, 70, 86, 87, allowed the $7,000 found by the commissioner (and it does not specifically appear from the court's findings and opinion what amounts made up the $13,290.22 allowed), plaintiff got only a little more than one-half of its extra costs due to the extra handling of this amount of dry-pack material. When we look at finding 5 and the opinion of the court in K–366, supra, we find that the court substantially adopted the commissioner's finding 5, except the tabulation listing the items and the amounts allowed as to each and, in lieu of that tabulation, made an ultimate finding of a lump-sum allowance in respect to the nine items of only $13,290.22, which was $53,492.20 less than plaintiff claimed and exactly $31,000 less than the commissioner had found and allowed. An examination of the court's opinion in 76 Ct.Cl. 64, at pages 86–90, shows that the court disallowed the item of $18,000 which the commissioner had allowed as damages for delay, and the item of $2,500 for waterproofing. These two items amount to $20,500.

For the reasons above stated I fail to see how it can be said from finding 5 in K–366 that plaintiff did not intend to make claim in his petition to Congress for compensation for excavating the caved-in materials. Instead, the foregoing analysis of finding 5, K–366, and sec. XV of the original petition would seem to show when considered in the light of plaintiff's statements in his petition to Congress, that he intended to and did make claim to Congress on account of the work of removing the material which caved in over the tunnel arch. In his original petition in this court plaintiff claimed, as indicated above, compensation on account of the cave-ins under sec. XV of his petition, and in his petition to Congress he stated that he had not been paid anything on account of the work of excavating the caved-in material. From the language of the Special Act Congress appears to have agreed with him in this and also in his claim that he ought to be paid something therefor. As I have hereinbefore pointed out, the question whether such an allowance should have been made in the Special Act is a legislative rather than a judicial question.

Plaintiff's petition to Congress and the wording of the act show, I think, that the provision in the Special Act for compensating plaintiff at the contract rate for the work of excavating the material which caved in over the tunnel arch was not carelessly or inadvertently placed in the act.

The claims committee of the House, as appears from the Attorney General's letter of April 28, 1941, set forth in the committee report, asked the Attorney General for a report on the bill. In his letter the Attorney General stated his views on sec. 2 of the bill to be that it directed the court to determine and render judgment on certain claims of Pope for work performed for which he had not been paid, but of which the Government had received the use and benefit, and that "This work is described as certain excavation and concrete work performed pursuant to change orders and the excavation of caved-in spaces and the filling of such caved-in spaces with dry packing and grout." Thus, it seems that the view of the Attorney General from his reading of the bill was that by the language thereof plaintiff would be entitled to compensation thereunder at the contract rate "for the work of excavating materials which caved in over the tunnel arch." The Attorney General stated to the committee that he preferred not to make any suggestions since the question "whether or not the bill should be enacted is a question of legislative policy."

The written statement of plaintiff, entitled "Statement of Allen Pope," which is also included in the committee report, and on the basis of which statement the bill apparently was drafted and introduced, contained seven headings.

Under the first heading, "Necessity of Legislation," plaintiff set forth that he was asking Congress, "which alone has jurisdiction," to direct the court "to consider the case again and grant him relief as was denied him heretofore, and give him judgment whereby he can, in a measure at least, be reimbursed for expenditures to which he was put in building the tunnel * * *, and for which the Government has received the benefit, but for the greater part of which claimant has never been paid."

Under the second heading, "The Contract," plaintiff set forth the nature of the work and stated that the contract was a unit-price contract; that the work to be done was divided into ten different items,

and that "payments were to be made on the basis of the unit prices bid for the various items and for as many units of work as were required to complete the project, irrespective of the quantities estimated in the specifications."

Under the third heading, "The Contract Project," the nature of the work and the size of the tunnel were described, and it was set forth that:

"The Government prepared the contract plans and indicated thereon certain representations as to the character of underground geological formations disclosed by the test borings made by the Government. The specifications warranted the descriptions given. The specifications also provided that when, during excavations, the ground caved in over the crown of the tunnel arch, such caved-in spaces were to be refilled with stones packed in place, called dry packing, and that the voids or spaces between such stones should be thoroughly filed with liquid cement mortar pumped into place. This cement mortar was to be made of specified proportions of sand, cement, and water, and was termed 'grout'. The 5 principal items which subsequently became involved in the issue of Pope's case in the Court of Claims were (1) excavation, (2) timber, (3) concrete, (4) dry packing, and (5) grout."

Under this heading, "Contract Project," plaintiff further set forth that the Government's estimate of quantities, upon which the contract was predicated, and bids were compared for award, was based on the geological representations given on the contract drawing which showed that the ground throughout the tunnel length would be substantially solid rock; that the Government, in addition to warranting its description of the geological formations disclosed by its test borings drilled on the site, obligated itself to give all lines and grades for performance of the work, to measure and make a record of all completed work, and to pay therefor on the basis of the contract unit prices.

Under the fourth heading, "Conditions in performance giving rise to claims," plaintiff set forth in this statement that:

"During performance of the excavation the character of the geological formation actually encountered by the contractor proved to be much different from that described on the Government's plans. Instead of solid rock, as thereon depicted, standing in place when tunnelled into, the ground was wet, running earth, or soft, seamy, loose, unstable formation which caved in. The roof of the excavation caved in for the full length of the tunnel, 3,543 feet. This is in striking contrast to the contract drawing prepared by the Government, which shows the entire tunnel lying in a region of rock with more than 95 percent of it designated on the drawing as 'hard rock.'

"As a consequence of such conditions, which could not have been anticipated from the contract drawings, it was necessary for the contractor to perform far more units of work than the Government had anticipated. For example, large portions of the excavation had to be timbered, and this meant that the cross-section had to be enlarged to accommodate the timbers. Thus, more excavation resulted than had been expected. Next, the caved-in spaces had to be refilled with dry packing and grout, which meant the use of more rock and more concrete than had been anticipated. In fact, the amounts of timber, dry packing, and grout employed by the contractor, as directed, amounted to more than ten times the Government's contract estimate."

This seems to be a clear assertion of a claim for excavation, as well as for the items of dry packing and grout.

Plaintiff's statement continued, and said:

"Obviously, therefore, the *items of expense* which the contractor did incur had not been anticipated to such an extent by the Government or by the contractor; *these items were the cost of removing all caved-in materials from the tunnel, the cost of bracing and supporting the excavation with timber, and the cost of refilling the caved-in spaces with the specified dry packing and grout,* together with the expense caused by prolongations or by changes of methods of operations imposed by errors, and reversals of decisions by the contracting officer. *That, in a single sentence, is the substance of claimant's case.*

"Insofar as the Government failed to pay for the contract work which was necessary, which was directed to be done, and the benefit of which the Government has received, and insofar as its errors and interferences caused damage or otherwise unnecessary expense to the contractor, he now asks *redress through such relief as the court may grant him.*" [Italics supplied].

From the above-mentioned portions of plaintiff's statement to Congress, which are consistent with the provisions of the special act and the committee report, it seems clear that plaintiff was making claim and that the committee and the Congress understood that he was making claim for compensation at contract rates, not only for the other claims mentioned but for the cost of excavating or removing all caved-in material from the tunnel as directed by the contracting officer. The provisions of the act substantially followed plaintiff's statement of his claims, except as to timbering and prolongations of the work. This court had previously in its findings and opinion (76 Ct.Cl. 64) made certain allowances to plaintiff for timber and interferences with the work, and it was doubtless for that reason that the special act did not include these items.

The claims committee in its report on the bill seems to have understood that under the terms of the act plaintiff would be compensated by the court for all excavation work performed by him at the direction of the contracting officer, along with other items mentioned, of which work the Government received the benefit, and for which plaintiff had not been paid.

Under the fifth heading of plaintiff's statement as set forth in the committee report, entitled "Court exhibits establishing claim resulting from changes in contract plans," plaintiff explained and asserted the first item of the claim specified in sec. 2 of the act, namely, for excavation and concrete work through the omission of timber lagging from the side walls of the tunnel, and the change of plans as to the "B" or "pay" line.

Under the sixth heading of plaintiff's statement, entitled "Other items of work for which claimant has not been paid," he set forth that:

"The court further found that the cost of excavating the tunnel was materially increased to the contractor, because he encountered much material that was soft, seamy rock and running earth, 'materials contrary in formation from what he expected to encounter.' As the result of this condition he was required to excavate materials which caved in over the tunnel arch, and then to fill the caved-in spaces with dry packing (stones put into place) and grout (liquid cement mortar which was pumped into the spaces between the dry packing, thus consolidating the whole into a solid mass). This was done at the direction of the contracting officer."

Under this heading the statement proceeds to set forth quotations from the findings of the court as to the extent to which the tunnel arch caved in, and as to the caved-in space over the arch outside of the "B" line being filled with dry packing and grout, for which no payment was made, and concluded such quotation from the court's findings, under the sixth heading, with a statement that "The pending bill would enable the court to determine the amount of dry-packing by the so-called liquid method as described by the court and based on the volume of grout actually used, and the amount of grout to be as determined by the court's previous findings based on the number of bags of cement used in the grout actually pumped into the dry packing." This last-quoted statement, which was made only with reference to dry packing and grout, should not, in the light of other statements by plaintiff as to the claims which he was making, be treated as intending to exclude the claim for compensation for excavation.

From the statement set forth by plaintiff under the sixth heading and other headings above-mentioned, it seems clear enough to me that he was claiming as one of the items of work for which he should be compensated, and for which he had not been paid, the excavation of caved-in materials as a result of the unstable sub-surface conditions mentioned, as a result of which he was required by direction of the contracting officer to excavate materials which caved in over the tunnel arch, as well as for excavation of material that caved in from the side of the tunnel.

Under the seventh heading, entitled "Conclusion," plaintiff concluded his petition with the statement that:

"Reference of this matter again to the Court of Claims is, therefore, only just and equitable in order to obviate a hardship which has been imposed upon the contractor. Only in this way can the Congress enable the court to rectify its own mistake and compensate the contractor for the materials and labor which he furnished to the Government, which were necessary in the construction of the tunnel, which the contracting officer directed to be supplied, of which the Government has received the benefit and use these many years, and yet for which Pope has not been paid."

This "Conclusion" of plaintiff's statement included all four claims which had previously been set forth in his petition to Congress.

If we look therefore to the history of or the reasons for the Special Act introduced and passed for the relief of plaintiff we find that the provisions of the bill are in accordance with the claims which he made in his statement to Congress. The provisions in the act specifying the claims for which plaintiff is to be compensated accord with the claims made, and substantially use the language which plaintiff used more than once in his petition for relief.

In addition to the above-quoted statements from plaintiff's statement to Congress, the statements made by the claims committee in its report, not in form of quotations, indicate that the committee understood and interpreted the bill as plaintiff now claims, and show, also, that the committee was advising Congress that the bill provided for rendition of judgment by the court at the contract rates upon the four claims specified, one and a part of another of which were for "excavation" of caved-in materials. The committee said:

"The purpose of the bill is to confer jurisdiction upon the Court of Claims to hear, determine, and render judgment upon certain claims of Allen Pope arising out of his construction of the tunnel * * *. The bill limits the jurisdiction of the court to certain items of work performed by the said Allen Pope in complying with orders of the contracting officer, for which items he has not been paid, but of which the Government has received the use and benefit, namely, certain excavation and concrete work and filling in of caved-in spaces, with dry packing and grout. Payment to the said Pope by the court would be at the rates provided in the contract."

I think, therefore, that denial of judgment in favor of plaintiff at the contract rate "for the work of excavating materials which caved in over the tunnel arch," fails to carry out the authority and intention of Congress as set forth in the Special Act. Such denial of this claim seems to me to be contrary to the plain and unambiguous language of the act, to the petition of plaintiff to Congress, and to the statements of the Attorney General and the claims committee as to their understanding of the items of the claim which were to be compensated for under the act.

In order to justify the conclusion that full effect should not be given to the provision of the act providing for compensation at the contract rate for the work of excavating the caved-in materials, it would be necessary to show that it was the clear intention of Congress that this excavation work should not be compensated for at the contract rate as a separate item of the claim but that it was clearly intended to be embraced in and covered by such compensation as might be allowed at contract rates of $3 for each unit of dry packing and grout. All the evidence as to what the act intended seems to me to be opposed to such a conclusion. The history of the act as disclosed by the committee report is not consistent with such an interpretation of the language of the act, but, instead, this history as disclosed by the written statement of plaintiff, the report of the Attorney General to the committee, and the report of the claims committee are all consistent with plaintiff's interpretation of the provision of the act that he should be paid, as on other specified claims, at the contract rate for this excavation work. I would, therefore, give plaintiff judgment on this item of his claim.

The only question remaining is whether plaintiff should be paid at $17 a cubic yard, fixed by the act, for 4,781 cubic yards as the amount of the caved-in material removed, or for some smaller amount. He claims compensation for the 4,781 cubic yards. This amount is determined by the liquid method, hereinbefore mentioned, on the basis of the amount of grout used, which, by using the full amount of 22,923 bags of cement, shows a total of 5,561 cubic yards; of this amount, 57 cubic yards of caved-in material excavated are included and paid for at $17 a cubic yard under item one of the claim, due to the lowering of the upper "B" or "pay" line. In addition, the evidence shows that 723 cubic yards of material were previously allowed by the court and paid for. The deduction of these two amounts, totaling 780 cubic yards, leaves 4,781 cubic yards. As has been hereinbefore stated, the liquid method of measurement is the only method now available which can be used for reasonably measuring the amount of caved-in material over the tunnel arch; that method is reasonably accurate for measuring the number of cubic yards in a space dry packed and grouted. However, there is some evidence in the record which shows that all of the grout

used, which is the basis of measurement, did not go entirely into the 40 percent dry-pack voids in the caved-in spaces, but that some of the grout found its way into rock fissures or seams, and into a test hole bored above the caved-in spaces before the construction work was commenced. In view of this, and the extent to which grout went into spaces other than the space from which material caved in and had to be removed from the tunnel, the liquid method of measurement does not measure with absolute accuracy the number of cubic yards of caved-in material. There is in the record, however, credible and convincing evidence to show that the amount of such extra grout over the amount which was necessary, and which did go to fill the dry-pack voids, was not more than 300 bags of cement. By deducting 300 of the 22,923 bags of cement actually used in grouting, as representing the amount of grout forced into voids other than in the actual caved-in dry-packed space, we have 22,623 bags of cement used to grout the space from which it is shown and admitted material actually caved in and was excavated. The liquid method of measurement based on 22,623 bags of cement shows 5,488.17 cubic yards of caved-in material which were removed. The deduction from this amount of the 780 cubic yards, above mentioned, leaves 4,708.17 cubic yards. At the contract rate specified in the act of $17 a cubic yard for the work of excavating this amount, 4,708.17 cubic yards, plaintiff is entitled to judgment of $80,038.89 on this item, and I think judgment should be entered accordingly.

WHITAKER, Judge, concurs in the foregoing opinion.